FILED

2016 Dec-13  AM 11:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANITA CAROL BAILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:15-CV-01527-VEH** |
| | ) | |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER, SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Anita Bailey ("Ms. Bailey"), brings this action seeking judicial review of a final adverse decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") denying her application for Social Security Adult Child Disability Benefits ("DAC"). Ms. Bailey filed an application for DAC on July 22, 2013. Thereafter, Ms. Bailey timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review pursuant to the provisions of section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.

1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court has carefully reviewed the entire record in this case and concludes that the Commissioner's decision is not supported by substantial evidence and that proper legal standards were not applied in reaching that decision. Accordingly, the decision of the Commissioner must be reversed and remanded for further review.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Bailey was a 58 year-old female at the time of her hearing before the Administrative Law Judge (the "ALJ"). (Tr. 183). She has a high school education and two years of college at Southern Junior College (now Virginia College). (Tr. 208). Ms. Bailey has no past work experience. (Tr. 209). Ms. Bailey claims that she became disabled sometime before her 22nd birthday. Ms. Bailey was diagnosed with bipolar II disorder (current episode depressed), generalized anxiety disorder, obsessive-compulsive disorder, and schizoid personality disorder by Dr. H. Randall Griffith ("Dr. Griffith"), a neuropsychologist, who saw the patient only one time. The ALJ found that the severity of Ms. Bailey's impairments meets the criteria of § 12.08.

(Doc. 11-1 at 8).[1]

Ms. Bailey filed two applications for disability at different points in time. She filed for Supplemental Security Income ("SSI") on May 17, 2012. (Tr. 89). This initial SSI application was denied by the Commissioner, and Ms. Bailey timely requested a hearing before an ALJ. While that request was pending, Ms. Bailey's father passed away. After his death, Ms. Bailey filed an application for DAC on July 22, 2013. (Tr. 102). The claims were consolidated for the purpose of having just one hearing, which took place on October 3, 2013. (Tr. 181). The ALJ issued two separate opinions on December 6, 2013, one which was fully favorable to Ms. Bailey's for her SSI claim and one denying her DAC claim. (*See generally* Doc. 11-1). On August 5, 2015, the Appeals Council denied review of Ms. Bailey's DAC claim. (Tr. 16-18).[2] Ms. Bailey appeals the adverse DAC decision.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner

---

[1] Neither the SSI nor the DAC decision by the ALJ were included as part of the original transcript (Doc. 10) filed by the Commissioner. Instead, those decisions were subsequently added to CM/ECF as Doc. 11-1. All page references to Doc. 11-1 correspond with the court's CM/ECF numbering system.

[2] As Ms. Bailey points out, on this same date, the Appeals Council also vacated her favorable SSI claim. (Doc. 18 at 3 n.2); (see also Tr. 19-21). Subsequently, on January 26, 2016, Ms. Bailey was awarded SSI benefits. (Doc. 18 at 3 n.2).

is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth* at 1239. Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act

and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of Nov. 3, 2016.

national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy. In order to qualify for DAC, a claimant must meet additional criteria. A claimant must (1) file an application, (2) be dependent on an insured parent who is entitled to old-age or disability benefits or has died, (3) be unmarried, and (4) at the time of the filing be under age 18, or age 18 or older and have a disability that began before the claimant became 22 years old. *See* 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350. The Commissioner evaluates a child's claim for DAC under the same standards generally applicable to adults applying on their own wage records by employing the five-step evaluation process listed above. *See* 20 C.F.R. §§ 404.1505(a), 404.1520(a)(4)(i)-(v).

6

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.    Ms. Bailey has not engaged in substantial gainful activity since May 8, 2012, the date of the application for SSI was filed. (Doc. 11-1 at 8).

2.     She has the severe impairment of personality disorder (schizoid). *Id*.

3.    The severity of her impairment meets the criteria of § 12.08 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(D) and § 416.925). *Id*.

4.    That Ms. Bailey attained age 22 on the day before her 22nd birthday (20 C.F.R. § 404.102). (Doc. 11-1 at 17).

5.    The claimant has not engage in substantial gainful activity since the alleged onset date (20 C.F.R. § 404.1520(b) and § 404.1571 *et seq*.). *Id*.

6.    The objective medical evidence fails to establish the existence of a medically determinable impairment prior to the date the claimant attained age 22 that could have reasonably been expected to produce claimant's symptoms (20 C.F.R. § 404.1520(c)). *Id*.

## ANALYSIS

### I.    Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial

evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).[4] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id*. (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).

Ms. Bailey urges this court to reverse the Commissioner's decision to deny her DAC claim. She asserts that the ALJ's decision "was neither supported by substantial evidence, nor made in accordance with correct legal standards." (Doc. 18 at 3). Ms. Bailey contends that "[t]he ALJ erred in finding that there was no evidence of a medically determinable impairment prior to age 22." *Id.* Additionally, because she alleged "a remote onset of disability" as part of her DAC claim, she maintains that the ALJ should have relied upon a medical advisor to give an opinion as to her appropriate onset date. *Id.* Upon review, this court agrees with Ms. Bailey and reverses and remands this case back to the Commissioner for further development and review.

---

[4] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

II.    **The ALJ failed to develop a full and fair record in regards to the onset date of Ms. Bailey's disability.**

   A.    **Despite finding her to be disabled, the ALJ's denial of Ms. Bailey's DAC claim was silent about SSR 83-20.**[5]

In this case, the ALJ expressly found that Ms. Bailey "is currently disabled as a result of schizoid personality disorder." (Doc. 11-1 at 17). The ALJ further observed that, to prevail on her DAC claim, Ms. Bailey needed to show that she suffered from this disorder before her 22nd birthday in 1978, but that the record lacked any "objective medical evidence before 2009." (Doc. 11-1 at 17-18).

Dr. H. Randall Griffith ("Dr. Griffith") issued a medical source statement after the hearing, dated October 10, 2013, in which he opined:

> As to the question of the existence of her Personality Disorder at or before age 22, please note that the DSM-IV criteria for Schizoid Personality Disorder indicate that these symptoms have their onset "beginning by early adulthood", and as such the presence of the personality disorder assumes a similar timeframe for onset of symptoms. Additionally, in my report I noted the following from Ms. Bailey:
> *Described being "different from other students" while in school (p. 2)
> *Described as a youth being a "recluse" and having trouble socializing with others (p. 2)

(Tr. 180). Concerning this evidence, the ALJ stated:

> The claimant's symptoms may well have begun "by early adulthood". However, there is no evidence from any acceptable medical source that

---

[5] Although the ALJ briefly mentioned SSR 83-20 during Ms. Bailey's hearing (Tr. 227-28), he never addressed that agency ruling in his written decision.

establishes that the claimant's symptoms began before [her 22nd
birthday] or if they did, that they were disabling. Dr. Griffith's post-
hearing explanation cannot substitute for relevant evidence for the time
period at issue.

(Doc. 11-1 at 18).

Ms. Bailey asserts that the ALJ failed in his duty to develop the record. (Doc.

18 at 6). More specifically, relying upon SSR 83-20–an agency ruling addressing

onset of disability–and citing to *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772

(11th Cir. 2010), Ms. Bailey contends that "the facts of [her] case beg for the ALJ to

enlist the services of a medical advisor" to establish her onset date consistent with

SSR 83-20. *Id.*

## **SSR 83-20**

Because of Ms. Bailey's reliance upon SSR 83-20, the court examines various

parts of that policy statement covering the onset of disability. Within the introductory

section, SSR 83-20 states:

> In addition to determining that an individual is disabled, the
> decisionmaker must also establish the onset date of disability. In many
> claims, the onset date is critical; it may affect the period for which the
> individual can be paid and may even be determinative of whether the
> individual is entitled to or eligible for any benefits.

SSR 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983) (emphasis added).

Concerning impairments attributable to nontraumatic causes such as Ms.

Bailey's schizoid disorder, SSR 83-20 explains:

> Onset in Disabilities of Nontraumatic Origin
>
> In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case. . . .
>
> Precise Evidence Not Available--Need for Inferences
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.
>
> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

SSR 83-20, 1983 WL 31249, at *2, *3 (emphasis added).[6]

---

[6] SSR 83-20 does not define the meaning of "medical advisor". The context of those cases dealing with SSR 83-20 indicates that the term is interchangeable with "medical opinion" or "medical expert".

**B.      Because Ms. Bailey's case presents issues of ambiguity in how to determine the onset date of her DAC claim, the court concludes that the ALJ should have followed SSR 83-20.**

In *Klawinski,* the claimant, who suffered from a slowly progressive knee disorder, claimed reversible error on the part of the ALJ because of non-compliance with SSR 83-20. 391 F. App'x at 775. Plaintiff Klawinski pointed out that the Eleventh Circuit "had not addressed the issue" and "cite[d] out-of-circuit law to address the issue of whether a medical advisor's testimony is necessary where an ALJ must retroactively determine a claimant's disability in the past and where the onset date is ambiguous. *Id.*

Concerning the scope of SSR 83-20, the *Klawinski* court indicated that

There are two situations where the ruling suggests the need for the ALJ to call a medical advisor during a hearing: (1) where it may be possible, based on medical evidence, to "reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination"; and (2) in terms of a malignant neoplastic disease,"[t]o establish onset of disability prior to the time a malignancy is first demonstrated to be inoperable or beyond control by other modes of therapy." *Id.*

391 F. App'x at 776. The unpublished panel held in *Klawinski* that "the ALJ did not contravene SSR 83-20 because the ALJ ultimately found that Klawinski was not disabled, and SSR 83-20 only required the ALJ to obtain a medical expert in certain instances to determine a disability onset date <u>after a finding of disability</u>." *Klawinski,*

12

391 F. App'x at 776 (emphasis added).

"Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 422.408 (1989)). While Social Security Rulings are not binding on courts, the Eleventh Circuit "accord[s] the rulings great respect and deference if the underlying statute is unclear and the legislative history offers no guidance." *B.B. ex rel. A.L.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir.1981) (holding that an illegitimate child is not a step-child under the language of 20 C.F.R. § 1109(b) and SSR 66-11);[7] *see also Seagraves v. Harris*, 629 F.2d 385, 390 (5th Cir. 1980) (stating that in light of ambiguities under the Act and pertinent legislative history "we adhere to the well established principle that great respect and deference is due 'the interpretation given (a) statute by the officers or agency charged with its administration'" (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566, 100 S. Ct. 790, 797, 63 L. Ed. 2d 22 (1980))); *Seagraves*, 629 F.2d at 391 ("This traditional deference is particularly apt where ... an agency is charged with implementing a comprehensive and complex administrative program and developing workable guidelines for states to follow." (citing *Richardson*

---

[7] 20 C.F.R. § 1109(b) has since been superceded by 20 C.F.R. § 404.357.

*v. Wright*, 405 U.S. 208, 209, 92 S. Ct. 788, 789, 31 L. Ed. 2d 151 (1972))). In both

*B.B. ex rel.* and *Seagraves*, the pre-*Bonner* Fifth Circuit was faced with ambiguous

issues under the Act and looked to applicable Social Security Rulings for guidance.

For example, in *B.B. ex rel.* the court had to determine whether a child

conceded by the child's mother to have a biological father different than the wage

earner (and the mother's legal husband) could, nonetheless, claim benefits as a

"stepchild" to that wage earner. 643 F.2d at 1069-1070. The applicable statutory

wording, 42 U.S.C. § 416(e), provides that "child" means "the child or legally

adopted child of an individual . . . [and] a stepchild . . . ." and does not separately

define "stepchild". *Id.* The *B.B. ex rel.* court further found that:

> [N]othing in the statutory history of the Social Security Act that
> illuminates Congress's understanding of the term "stepchild." The
> applicable regulations offer little more guidance. 20 C.F.R. s 1109(b),
> in effect when Mrs. B filed A's claim, provided:
>
>> the term "stepchild" means a claimant who ... is the
>> stepchild of the individual upon whose wages and
>> self-employment income his application is based by reason
>> of a valid marriage of his parent ... or adopting parent with
>> such individual.

*B. B. ex rel.*, 643 F.2d at 1070.

The court then turned to legal dictionaries trying to search for an appropriate

definition. 643 F.2d at 1070-71. Ultimately, the court found that "that A is not Mr.

14

B's stepchild as that term is commonly understood." 643 F.2d at 1071. In reaching this conclusion the court, citing to *Seagraves*, expressly relied upon "a 1966 administrative ruling . . . that [clarified] the child of an adulterous relationship is not the stepchild of the parent's spouse, even where the purported stepparent accepts and supports the child." *B.B. ex rel.* at 1071.

Similar to *B.B. ex rel.*, Ms. Bailey's case presents issues of ambiguity in how to determine the onset date of her DAC claim and the ALJ's duty in that regard. The Act provides in pertinent part that a DAC claimant will be entitled to benefits if that child:

> (B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school student and had not attained the age of 19, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22 . . . .

42 U.S.C. § 402(d)(1)(B). The corresponding part of the Regulations states:

> You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if . . . you are 18 years old or older and have a disability that began before you became 22 years old.

C.F.R. § 404.350(a)(5).

In the absence of statutory language, legislative history, or regulatory direction on how to establish an onset date for a DAC claim like Ms. Bailey's that lacks certainty,

this court is guided by *B.B. ex rel.* and *Seagraves* and turns to SSR 83-20 for guidance. Further, the court concludes, consistent with SSR 83-20, that Ms. Bailey's case is one in which the ALJ should have "call[ed] on the services of a medical advisor" to infer the onset date of Ms. Bailey's disability. *Cf. Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) ("The plain language of SSR 83-20 indicates that it is applicable only after there has been a finding of disability and it is then necessary to determine when the disability began.").

In *Caces*, an unpublished Eleventh Circuit panel found that "[t]here was no need for assistance from a medical advisor to determine the date of onset because the unambiguous medical evidence shows Caces was not disabled before the date of last insured." 560 F. App'x at 939. In reaching this conclusion, the *Caces* court discussed the contrasting case of *March v. Massanari*, No. 00–16577, 265 F.3d 1065 (Table) (11th Cir. Jul. 10, 2001):

> The ALJ in March found that the claimant was not disabled before the date last insured, based on the absence of sufficient medical evidence for the period of insurance from which to ascertain the date of onset. All of March's physicians who treated him several years after the date he was last insured, however, determined that he evidenced signs of bipolar disorder at least six years before his insured status ended. Thus, <u>the uncertain date of onset for March would need to be inferred, given the sparse medical record predating the date last insured and the overwhelming evidence that came to light after the date last insured from his then treating physicians</u>. The circumstances of March presented precisely the situation under SSR 83–20 calling for a medical advisor to

assist in determining an inferred onset date.

> Unlike *March*, this case does not involve the uncertainty of an onset date of disability based on the medical records, or lack thereof, generated during the insured period. The file in this case before the ALJ and the Appeals Council is replete with medical evidence that supported the finding that Caces was not disabled at any time between the date of the alleged onset in June 2006 and the date last insured of December 31, 2006.

*Caces*, 560 F. App'x at 939 (emphasis added).

Similarly, the district court decision in *McManus v. Barnhart*, No. 5:04-CV-67-Oc-GRJ, 2004 WL 3316303 (M.D. Fla. Dec. 14, 2004), is instructive. As the *McManus* court reasoned regarding SSR 83-20:

> Because the issue of onset is inextricably tied to the determination of disability in cases where the impairment is a slowly progressive condition that is not traumatic in origin, the Court concludes that the most logical interpretation of SSR 83–20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous. Accordingly, in those situations the ALJ should be required to obtain the advice of a medical advisor to assist the ALJ in making the determination from the available medical evidence of whether the slowly progressive impairment constituted a disability prior to the date last insured.

> In the instant case, the Court concludes that Plaintiff's impairment was a slowly progressive one and that the ALJ was required to make a retroactive inference regarding the onset and existence of disability and, thus, SSR 83–20 is implicated.

2004 WL 3316303, at *6-7.

Based upon the undersigned's research, the Eleventh Circuit has yet to address SSR 83-20 in a published opinion. Other circuits that have include the Third, Fourth, Fifth, Sixth, Seventh, and Ninth. *See Walton v. Halter*, 243 F.3d 703, 709-10 (3d Cir. 2001) ("SSR 83–20 and the substantial evidence rule dictate . . . that an ALJ in a situation of this kind must call upon the services of a medical advisor rather than rely on his own lay analysis of the evidence."); *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995) (mandating enlistment of a medical expert when onset is ambiguous despite SSR 83–20's apparently permissive language); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) ("We therefore hold that in cases involving slowly progressive impairments, when the medical evidence regarding the onset date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83–20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor."); *Blankenship v. Bowen*, 874 F.2d 1116, 1122-23 (6th Cir. 1989) (analyzing SSR 83-20 in context of claimant alleging a mental disability); *Lichter v. Bowen*, 814 F.2d 430, 436 (7th Cir. 1987) ("We find that the ALJ's determination of the onset date might have been different had he applied SSR 83-20. We therefore vacate and remand the judgment to allow a consideration of the possible application of SSR 83–20 to Lichter's claim."); *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997) ("If the medical evidence

is ambiguous and a retroactive inference is necessary, SSR 83–20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.'"); *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83–20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.").

*Walton* is particularly informative in light of Ms. Bailey's bi-polar disorder and other mental health impairments. The claimant in *Walton* was found to have bi-polar disorder, which qualified him for disability benefits. 243 F.3d at 705. The issue in *Walton* was the lack of medical evidence of onset before his 22nd birthday. *Id*. Similar to the record here, Mr. Walton could not provide medical documentation of a diagnosis prior to his 22nd birthday, but he did provide evidence from a current treating physician which opined that the disorder likely started well before age 22. *Id*. The ALJ was forced to rely on school records and testimony from a treating psychiatrist, who no longer had access to Mr. Walton's past files. *Id*. at 706. The court concluded that:

> [T]he ALJ, even if he had had the assistance of a medical advisor, could not have rejected the opinion of Dr. Gibbon, a treating physician, solely on the basis that his opinion was based on information supplied by

Walton and not on personal observation of Walton during the relevant period. As SSR 83–20 clearly reflects, a conclusion regarding onset in a situation of this kind can, and frequently must, be based on information gathered after the fact from the claimant and, indeed, from other lay people like family and neighbors. The basis for a medical opinion is, of course, an indispensable element of a reasoned evaluation of it, and there are, of course, situations in which an opinion based on personal observation may be favored over one based on information supplied by the claimant. But this is a situation in which an opinion based on personal, contemporaneous observation was not available. In such a situation, <u>SSR 83–20 calls for an ALJ to have the benefit of expert medical advice based on the best available data without regard to its source</u>.

*Id.* at 710 (emphasis added). Akin to *Walton*, Dr. Griffith's statement about Ms. Bailey's likely onset date (Tr. 180) is not based upon a "personal observation of [Ms. Bailey] during the relevant period." Nonetheless, that limitation does not preclude the ALJ from relying upon Dr. Griffith's medical opinion pursuant to SSR 83-20.

Additionally, Jeannie Burton ("Ms. Burton"), a licensed clinical social worker who came to know Ms. Bailey through a church referral (Tr. 212), testified at the hearing about conversations she had with Ms. Bailey's family members about her past behavior and social interactions that point to an onset date before Ms. Bailey's 22nd birthday. (*See* Tr. 223 (indicating from conversations with Ms. Bailey's father and her cousin that Ms. Bailey showed signs of a mental disorder as a child and specifically testifying that "her father said she has always been like that and...her first cousin...I asked him how long she had been like this and he said 57 years. And she's 58.")). An

20

ALJ's reliance upon this type of evidence is permissible when SSR 83-20 is triggered.

The Commissioner references Ms. Bailey's school records to rebut the claim that her disability began prior to her 22nd birthday. (Doc. 19 at 2-3). But, merely attending college, especially when she withdrew after two years,[8] is insufficient to show that Ms. Bailey's onset date occurred on or after her 22nd birthday. Additionally, the record shows that Ms. Bailey was held back in first grade. (Tr. 146).

The Commissioner's brief cites to *Nixon v. Astrue*, No. 1:11-CV-2032, 2012 WL 5507310 (N.D. Ga. Nov. 14, 2012), in an effort to overcome the need to rely on a medical advisor in Ms. Bailey's case. (Doc. 19 at 7). *Nixon* recognizes that "courts have generally interpreted SSR 83-20 to require that an ALJ obtain the opinion of a medical expert when the medical evidence is either inadequate or ambiguous as to the specific date of onset." 2012 WL 5507310, at *4. Further, the court found in *Nixon* that the ALJ's failure to adhere to SSR 83-20 was reversible error:

> [B]ecause the Plaintiff's impairments were progressive in nature and the medical evidence is inadequate, the ALJ was required to infer an onset date of disability. Because the ALJ failed to consult a medical source for an opinion regarding the onset date, the ALJ's inference of November 20, 2006 is not adequately supported by the record. The case must be remanded to allow the ALJ to obtain and consider a medical opinion on this issue.

---

[8] Unfortunately, the record does not provide any information about Ms. Bailey's age upon entering or withdrawing from college. The ALJ should endeavor to develop this further upon remand.

2012 WL 5507310, at *7. Therefore, *Nixon* is not helpful to the Commissioner and instead is consistent with this court's conclusion that the ALJ's failure to follow SSR 83-20 in this instance constitutes reversible error.

> **C.    To the extent that the medical source statement provided by Dr. Griffith was ambiguous about Ms. Bailey's onset date, the ALJ needed to re-contact him rather than reject his opinion entirely.**

In cases of ambiguous medical statements, the ALJ has the duty to seek clarification. *Davis v. Barnahrt,* 405 F. Supp. 2d 1355, 1358 (N.D. Ala. 2005). The opinion evidence provided by Dr. Griffith post-hearing diagnosed Ms. Bailey with schizoid personality disorder, indicated a general onset date of "early adulthood", and referenced two subjective statements from Ms. Bailey describing herself when she was a child. (Tr. 180). Dr. Griffith provided no additional information in regards to what he meant by using "early adulthood" to describe Ms. Bailey's onset date. Further, in disregarding this opinion evidence, the ALJ vaguely stated that "Dr. Griffith's explanation is inadequate to bridge the gap between the existing medical record and the dates for which the claimant must establish disability." (Doc. 11-1 at 18). The ALJ never mentioned SSR 83-20 in his denial of Ms. Bailey's DAC claim.

As the court explained in *Davis,* "[t]he ALJ has the authority to and must require greater clarity of physicians dealing with the critical issue of whether an

individual receives Social Security benefits. Receipt of benefits is crucial for the truly disabled, and denial of benefits to the non-disabled is important for the taxpayers." *Davis*, 405 F. Supp 2d at 1358. The ALJ stated during the hearing that Ms. Bailey's case was "a very tough case to wrestle with" (Tr. 224) and that he was facing a "dilemma." (Tr. 224). To the extent that Dr. Griffith's post-hearing statement did not reasonably clarify the onset date for the ALJ, then it was incumbent upon the ALJ to seek a more specific statement from Dr. Griffith and otherwise infer Ms. Bailey's onset date consistent with SSR 83-20. *Cf. Johnson v. Barnhart*, 138 F. App'x. 266, 271 ("Given the record before us, we find that the Commissioner was not able to make a disability determination based on the evidence presented, and, therefore, additional evidence was necessary."); *Gallina v. Comm'r of Soc. Sec.*, 202 F. App'x 387, 388 (11th Cir. 2006) ("While the ALJ has a basic obligation to develop a full and fair record, medical sources generally need only be re-contacted when the evidence received from that source is inadequate to determine whether the claimant is disabled." (citing Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir.1997) (per curiam))); *Robinson v. Astrue,* 365 F. App'x. 993, 999 (11th Cir. 2010) ("According to Social Security regulations, an ALJ should recontact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled.").

Therefore, to the extent Dr. Griffith's onset opinion is ambiguous, the ALJ should re-contact him upon remand (rather than reject his opinion entirely) and otherwise develop Ms. Bailey's onset date consistent with SSR 83-20.

## CONCLUSION

The court concludes that the ALJ committed reversible error by not adhering to SSR 83-20 or otherwise adequately developing the record concerning Ms. Bailey's disability onset date. The Commissioner's final decision is therefore due to be reversed and remanded, and a separate order in accordance with the memorandum opinion will be entered.

**DONE** and **ORDERED** this the 13th day of December, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

24